IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAWRENCE FAULKENBERRY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 1:15-cv-01089 |
| | § | |
| CALDWELL COUNTY, TEXAS | § | |
| CALDWELL COUNTY SHERIFF'S | § | |
| OFFICE, SERGEANT YOST, | § | |
| DEPUTY M. TAYLOR, | § | |
| DEPUTY HOUSETON, AND | § | |
| CAPTAIN JESSE HERNANDEZ | § | |
| Defendants. | § | |

**DEFENDANT YOST'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW AND ALTERNATIVELY, MOTION FOR NEW TRIAL**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Dustin Yost requests that the Court grant a renewed motion for judgment as a

matter of law, as authorized by Federal Rule of Civil Procedure 50(b) or alternatively, grant a

motion for new trial pursuant to Federal Rule of Civil Procedure 59. Additionally, Defendant

Michael Taylor also requests judgment be entered in his favor as the jury incorrectly awarded

punitive damages without a finding of liability. Defendant Yost respectfully requests the Court to

enter judgment in favor of him and would show the Court the following:

## I.      Statement of the Case

Plaintiff Lawrence Faulkenberry ("Faulkenberry") filed his Original Complaint on

December 2, 2015, against Defendants Caldwell County, Sergeant Dustin Yost, Deputy Michael

Taylor, and Deputy Galen Houseton. Docket Entry No. 1. On July 5, 2016, Faulkenberry filed his

First Amended Complaint and added Captain Jesse Hernandez as a defendant. Docket Entry No.

19. Faulkenberry alleges Defendants violated his civil rights under 42 U.S.C. § 1983. *Id*. at ¶ 30.

Specifically, Faulkenberry alleged that the deputy sheriff defendants violated the Fourth and Fourteenth Amendments to the United States Constitution by using excessive force, by fabricating criminal charges against him, by a warrantless search of his property, and that Defendants Caldwell County and the Caldwell County Sheriff's Office had a policy of tolerating excessive force and other civil rights violations. *Id.* at ¶ 30-36. Faulkenberry also alleged state law causes of action under the common law and the Texas Tort Claims Act for assault and malicious prosecution. *Id.* ¶ 37-40.

On April 28, 2017, all Defendants filed their Motion for Summary Judgment. Docket Entry No. 28. The Court entered its Order on Defendants' Motion for Summary Judgement on July 21, 2017. Docket Entry No. 51. The Court dismissed Faulkenberry's claims against the Officer Defendants for false arrest and all of his claims against the County. *Id.* On July 21, 2017, the Court granted Faulkenberry's request to file a Second Amended Complaint which, in part, dropped all claims related to state law causes of action pursuant to the Texas Tort Claims Act for: (1) use of property ("including, without limitation, handcuffs and the Caldwell County jail"); (2) assault; and (3) malicious prosecution. *Id.* (*See also*, Docket Entry No. 19, First Amended Complaint ¶¶ 37-40 and Docket Entry No. 52, Second Amended Complaint.)

The remaining two claims, excessive force claims and unreasonable search claims, were set for trial on September 18, 2017. During the trial on the merits, Defendants Yost, Taylor, Houseton and Hernandez moved for judgment as a matter of law before the case was submitted to the jury. The Court submitted the case to the jury and the jury returned the verdict on September 21, 2017, finding only liability against Sergeant Yost on the claim of excessive use of force and in favor of Deputies Taylor and Houseton on the claim of excessive use of force and in favor of Defendants Yost, Taylor and Hernandez on the claim of unreasonable search. Docket Entry No. 81 (*See also*, Appendix).

The Court has not entered judgment in this matter. However, this motion is timely filed pursuant to Fed. R. Civ. P. 50 (b) and 59 and pursuant to the deadline set by the Court following the jury verdict.

## II.      Renewed Motion for Judgment as a Matter of Law

### A.      Prerequisites

Sergeant Yost has satisfied the procedural requirement for filing a renewed motion as a matter of law by making a motion for judgment as a matter of law at the close of the Plaintiff's evidence and at the close of all evidence. *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir.1996). This motion is based on grounds previously raised in the motion for judgment as a matter of law. FED. R. CIV. P. 50(b). The Court should grant the request for judgment as a matter of law because the evidence is legally insufficient to support the verdict rendered by the jury. *Texas Farm Bureau v. United States*, 53 F.3d 120, 123 (5th Cir. 1995). In this case, there was not a conflict in substantial evidence to create a jury question.

### B.      Standard

"A motion for judgment as a matter of law should be granted by the trial court if, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable people could not arrive at a contrary verdict." *Id*. The Court may grant a motion for judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-movant on a challenged issue. *King v. Ames*, 179 F.3d 370, 373 (5th Cir.1999). That motion can be denied only if there is substantial evidence – "[t]hat is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion." *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir.1996).

Here, the facts and inferences from all of the evidence and testimony presented at trial, viewed in the light most favorable to Faulkenberry, point so strongly in favor of Sergeant Yost's position – that excessive force was not used against Faulkenberry and that Sergeant Yost's actions were objectively reasonable, lawful, and necessary in light of all attendant circumstances – that a rational jury could not arrive at a contrary verdict.   Therefore, judgment should be rendered in favor of Sergeant Yost.

**C.      There is no legally sufficient evidentiary basis to support a judgment against Sergeant Yost and Sergeant Yost is entitled to qualified immunity.**

Qualified immunity shields from liability officials who perform their duties reasonably and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan,* 555 U.S. 223, 236, (2009). It is generally true that public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity protects officers sued in their individual capacity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998)*.* The test for qualified immunity has two parts that a plaintiff must prove in order to prevail. First, the Plaintiff must establish that a public official's conduct deprived the Plaintiff of a clearly established constitutional right. *Id.* at 466-7. "Clearly established" means sufficiently clear to put a reasonable officer on notice that his conduct may violate a person's rights. *Id.; see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989); *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir.1989). "A constitutional violation does not occur every time someone feels that they have been wronged or treated unfairly. There is no constitutional right to be free from emotional distress." *Shinn on Behalf of Shinn v. Coll. Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996).

The second question for the defense of qualified immunity is whether the official's conduct was objectively reasonable. *See Sanchez*, 139 F.3d at 467.  Even if an official violates a person's civil rights, the official may still be entitled to qualified immunity if the conduct was objectively reasonable. *Id.*, *citing Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990). "Objectively reasonable" means, given the totality of the circumstances confronting the official, viewed objectively, was the action justified. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). Trial courts are free to answer these two questions in any order they choose. *Callahan*, 555 U.S. at 236.

The Supreme Court has determined that "the Fourth Amendment reasonableness inquiry is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 386 (U.S. 1989)(internal quotations omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Id*. Further, the reasonableness of a particular use of force should not be judged with the 20/20 vision of hindsight but only from the perspective of a reasonable officer on the scene.  *Id*. at 396. *(See Terry v. Ohio,* 392 U.S. 1, 20–22, (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-397.

Factors to consider in determining whether the force was "objectively reasonable" include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016)(*see Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

The arguments presented in *Griggs v. Brewer* are almost identical to those presented by Faulkenberry in this matter. Griggs argued that he was not resisting arrest and the "takedown" was an unreasonable use of force. The Fifth Circuit stated that "[a]lthough he is correct that, based on his testimony and the ambiguities in the video, a reasonable jury might find that he was not *actually* resisting arrest, **that is not the proper inquiry** in this appeal." *Id* at 313 (emphasis added). "A court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts." *Id*. 314-314 (*citing Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 234 (5th Cir. 2009)(emphasis added)).

In *Griggs*, the officer was faced with "a late-night traffic stop involving a clearly drunk and obstinate individual, lurching to the side and stating 'no, no,' *in the act* of being handcuffed, immediately following the command to 'put your hands behind your back.'" There is no dispute that Sergeant Yost and the other officers faced an even more dangerous situation than in *Griggs,* which was only a driving while intoxicated traffic stop where the officer had previously patted Griggs down and knew that he was unarmed. Under the totality of the circumstances, Sergeant Yost: (1) responded to a family disturbance 911 call that was reported to involve an intoxicated and armed individual at a residence that had previously been marked dangerous; (2) encountered an obstinate individual, screaming profanity and ignoring multiple orders including, those to place his hands behind back and walk backwards towards the deputy sheriffs, away from the doorway of the office; (3) noticed and verified, with a touch to the sweatshirt, the existence of an unknown object, potentially the gun, in the front pocket of Faulkenberry's sweatshirt; and (4) while in the act of handcuffing Faulkenberry, continued to give Faulkenberry the command to put his hands behind his back as Faulkenberry stated "why are you fucking…there ain't nothing on me, man.

What the hell is wrong, you got a warrant." Defendant's Trial Exhibits 1a and 5; TT Vol.2, 59:5-11; 111:16-23; 107:12-16, 108:18-20. It is undisputed that Sergeant Yost, upon arrival, announced "Sheriff's Office" on four separate occasions. Defendant's Trial Exhibit 1a. Prior to Sergeant Yost's split-second decision for the takedown, Sergeant Yost lawfully ordered Faulkenberry to walk backwards towards the officers and turn around several times for which Faulkenberry intentionally failed to comply by stating that "I don't trust you, I'm not moving," "fuck you," and "no," respectively. *Id*. Further, Sergeant Yost inquired as to whether Faulkenberry had a firearm and Faulkenberry responded by stating "no, I don't have a fucking gun on me, this dick does." *Id*.

Here, there is no dispute that Faulkenberry was standing in the doorway of the office which is commonly referred to as the "fatal funnel" to law enforcement officers. TT Vol.2, 114:14-18; TT Vol.3 148:1-14; Defendants' Trial Exhibit 5. Sergeant Yost's undisputed testimony was that his perception of Faulkenberry's repeated failures to comply and follow instructions to move away from the doorway was a concern. Trial Transcript, Volume 2, page 114 at line 10 – page 115 at line 3.[1] Specifically, Sergeant Yost "didn't know if he was going to reach back in or run back into the office, didn't know where the firearm might be or if there's anybody else in there." TT Vol.2, 114:23-25. Further, Deputy Taylor testified that Faulkenberry's "initial demeanor came off very aggressive and he was standing right there in the doorway.  We weren't sure if there was any more victims or suspects inside the building, and we needed to get out of the fatal point of uncertainty for our safety and for Mr. Faulkenberry's, as well." TT Vol.3, 15:19-23.  Additionally, Margo Frasier testified that this scenario is "referred to as a fatal funnel.  The idea being that you've got to be careful about – the idea that everything is kind of going to one point and getting yourself in a dangerous situation.  Mr. Faulkenberry is right outside the door, and so, he has a hoody on, and

---

[1] The trial transcript will be referred to as TT Vol._, page : line – "TT Vol.2, 114:10 – 115:3.

so you're not sure what all he may have on his body.  His hands are up as they've told him to keep his hand up, and he's done that, but he's very close to the door.  So one of the concerns is, he could very easily go back in the building, and then, you would have a barricaded-subject situation.  So I want to get him away from the door and I want to get him restrained and searched." TT Vol.3, 148:3-14.

Additionally, Sergeant Yost testified that he touched the pocket of the hoody because there was a big bulge there but could not tell what it was and was concerned that it might be the firearm. TT Vol.2, 111:16-23. Further, Yost testified that as he reached for his handcuffs, Faulkenberry continued to disobey orders and turned to speak to Deputy Taylor. TT Vol.2, 113:23 – 114:9. Faulkenberry stated "why are you fucking…there ain't nothing on me, man.  What the hell is wrong, you got a warrant." Defendants' Trial Exhibit 1a at 03:13. During that split second, Sergeant Yost testified that he believed "that [Faulkenberry's] trying to get away and he's trying to pull away from me.  Either grab a weapon or just to get away."  TT Vol.2, 114:8-9. Further, Ms. Frasier testified that

> "you have an individual who now I'm assuming you've gotten close up enough to confirm that perhaps he is intoxicated.  You know, you have the added knowledge of the fact that he's not done anything you've asked him to other than put his hands up.  He's been very verbally aggressive.  And so, now as a reasonable officer in Sergeant Yost's position would believe that he's trying to resist the cuffing of him, and the danger is if he gets his hand away with that pouch – because by this time, I don't know if people have noticed on the video, but when they walk up to him, Sergeant Yost – I'm not sure whether it's his right or left hand.  I can't recall – but he reaches out and touches the pouch because that's obviously the area they're most concerned about.  He reaches out and touches the pouch and, my understanding, feels that there is something in the pouch.  So he's still not certain what is in the pouch.  So if he can get his arm away, it's going to be very easy for him to put his hand in that pouch and if it is a gun, to get the gun to do harm to any of the three officers.

TT Vol.3, 154:12-24

> [O]ften what officers are trained is the idea that you want to – someone incapacitate him from being able to reach that gun.  And so, the idea is you get him on the

ground because if you have him on the ground, it's easier to control an individual who's laying on the ground.  There's a thing that says everybody's the same size when they're on the ground.  Not quite true, but closer to true. So the idea that you want to get him on the ground so that you can gain control of his arms and secure whatever that is that's in the pouch, that you can get that out."

TT Vol.3, 155:3-12.

As in *Griggs*, the circumstances and totality of Faulkenberry's actions would, to a reasonable police officer, amount to resistance and Sergeant Yost's conduct in executing the initial takedown was not constitutionally unreasonable in the light of clearly established law. "Or, stated differently, [the Fifth Circuit] precedent does not clearly establish that this 'takedown' maneuver—against a drunken, erratic suspect who is resisting arrest—is constitutionally unreasonable." *See Hope v. Pelzer*, 536 U.S. 730, 739, 122 (2002) In *Griggs*, the Court stated that the officer's

> actions may not have been as restrained as we would like to expect from model police conduct, but qualified immunity protect[s] officers from the sometimes hazy border between excessive and acceptable force. *Saucier v. Katz*, 533 U.S. 194, 206, (2001)(citations and quotations omitted), *overruled in part on other grounds*, *Pearson*, 555 U.S. at 227; *see also Graham*, 490 U.S. at 396–97, ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

*Griggs v. Brewer*, 841 F.3d 308, 314–15 (5th Cir. 2016).

Although the parties have different "spins" on the facts, the pertinent objective facts, demonstrated by testimony and the videos, are undisputed. As in *Griggs*, there is no material fact issue and none of Sergeant Yost's conduct in effecting Faulkenberry's arrest was objectively unreasonable in the light of clearly established law. Thus, Sergeant Yost is entitled to qualified immunity.

The second issue is whether Sergeant Yost's single distraction strike/compliance strike to Faulkenberry while he was on the ground, as the officers attempted to handcuff him, amounted to excessive force. In *Griggs*, the officer that threw Griggs to the ground, placed his weight on top of

him and attempted to handcuff him. *Griggs*, 841 F.3d at 315.The officer punched Griggs to gain control over his arms. *Id*. Here, it is undisputed that an officer can be heard ordering Faulkenberry to put his hands behind his back while on the ground. Defendants' Trial Exhibit 1a at 03:28. Further, the surveillance camera clearly shows the officers struggling to gain control of Faulkenberry's hands while on the ground and attempting to remove the contents (potential gun) from the pocket of his sweatshirt. Defendants' Trial Exhibit 5. During that split-second on the ground, it is undisputed that Faulkenberry's arms were initially not under the control of the officers as Sergeant Yost fell to the ground first and Faulkenberry's arm visibly moves freely. *Id. See also* TT Vol.2, 115:23 – 116:14. Sergeant Yost testified that while on the ground they were "trying to get his arms out from underneath him" because they were concerned "that he had something inside of his hoody or his waistband. That's where he was reaching to. He was reaching towards his waistband and pocket of his hoody." TT Vol.2, 117:18-23. Further, Sergeant Yost stated that he was trained to use a tactical maneuver to gain compliance, the hand strike, which was ultimately successful in gaining Faulkenberry's compliance to get his hands out from underneath him in order to handcuff him. TT Vol.2, 117:24 – 118:20.

Although unaware of Sergeant Yost's split-second decision to strike Faulkenberry, Deputy Taylor testified that he "was too fixated on trying to get [Faulkenberry's] hands from underneath him" and that he was the officer that was able to remove the items in the pocket. TT Vol.3, 12:2–13 and 20:20-21:3. Further, Ms. Frasier testified concerning the distraction strike and the objective of the officers while on the ground:

> Get control of his arms. So the idea – you want to ideally get his arms out from under him and get him handcuffed behind his back so he can no longer – if it turns out – you're not certain whether it's a weapon or not because you don't want to take that chance, and so, you want to gain control of his hands so he's not able to reach a weapon.

TT Vol.3, 157:15–21.

So when someone will not comply and particularly it's a situation -- and it's one thing if they're laying there on their arms and you know that there's nothing they're doing other than laying on their arms. Now I've got more time. You know, quite frankly, I can do some -- try some pressure points and tug for a little longer and all this sort of thing. But in this situation, they're still concerned that it is a gun, and so, what they're trained is to quickly gain control of that arm; and one of the ways you do it is that you do what's called a distraction strike. So the idea that I'm going to strike you with the idea that you're now going to think about the strike and by that you're not going to be able to resist me as much, and I'll be able to secure your arm. So Sergeant Yost struck Mr. Faulkenberry, actually, in the face and was able to get his -- it was successful. He was able to get his arm out and get him cuffed.

Yeah. And what I try to look at is whether it's reasonable, you know, an officer exercising discretion would try and do this. I would tell you that if you still think that this person is -- you've been told they're armed and they're intoxicated and you know he hadn't been cooperating with you thus far, I'm not doing a lot of talking if I can't get -- I'm going to do something so I can get control of his hands because he now has his hands on what I'm worried about, and all he has to do at this point if he's got his hand on that gun is just roll and he can shoot, which, quite frankly, is very similar to what happened to Officer Padron here in Austin. The young man he struggled with at the Wal-Mart had a gun and just rolled to the side and was able to shoot Officer Padron.

TT Vol.3, 158:3 – 159:13.

The question is whether Sergeant Yost's conduct was unreasonable in the light of clearly established law. In this instance, Faulkenberry cannot direct the Court's attention to any authority establishing that it was unreasonable for an officer to use non-deadly punches to gain control of the arms of a believed armed, drunken and obstinate suspect who was perceived to be resisting and noncompliant with lawfully orders. Simply put, it is reasonable to believe that when applying the *Graham* factors, some use of force to gain control of Faulkenberry was not objectively unreasonable. Under *Graham*, a family disturbance 911 call that was reported to involve an intoxicated and armed individual at a residence that had previously been marked dangerous is a serious crime; the alleged intoxicated Faulkenberry was capable of and evinced erratic behavior; and Faulkenberry had been and continued to demonstrate resistance during the course of the

detainment. The hand strike was effective for its purpose of gaining compliance from Faulkenberry and handcuffing his hands away from the potential gun in his sweatshirt pocket underneath him.

As in *Griggs*, the officers might have used less forceful conduct; however, there was no settled authority to put Sergeant Yost on notice that his use of force in such circumstances violated Faulkenberry's constitutional rights. *Griggs* at 315. (*citing Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012))("We must evaluate an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.")(citations and quotations omitted)). Therefore, Sergeant Yost is entitled to qualified immunity as to the claims stemming from his attempts to handcuff Faulkenberry while Faulkenberry was on the ground.

Finally, Faulkenberry claimed that the handcuffs were too tight and caused him pain. However, there is no evidence that the handcuffs produced anything more than a de minimus injury, if any. Faulkenberry testified that he did not seek medical treatment and does not allege that there was any serious and/or permanent injury. TT Vol.2, 31:15-25. Specifically, Faulkenberry testified that he did not seek any medical treatment for his wrist because it was superficial. TT Vol.1, 91:11-15. Such a claim, without more, does not constitute excessive force. The Fifth Circuit has determined "that handcuffing too tightly, without more, does not amount to excessive force." *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010)(*citing Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001); *accord Freeman v. Gore,* 483 F.3d 404, 417 (5th Cir.2007)(rejecting as *de minimis* the plaintiff's claim "that the deputies twisted her arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms."). Further, there is no evidence of damages to Faulkenberry from any such alleged injury. Therefore, Sergeant Yost is entitled to qualified immunity.

For these reasons, Sergeant Yost's Renewed Motion for Judgment as a Matter of Law should be granted based on his entitlement to qualified immunity and judgment should be entered in his favor.

## D.   Damages

In the alternative, the damages awarded by the jury's verdict are not supported by the evidence. Specifically, the evidence presented at trial does not support the jury's verdict for compensatory or punitive damages. The jury verdict contained five questions regarding compensatory damages—past pain and suffering, past medical expenses, past lost wages, future pain and suffering, and future lost wages. "In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989). "In determining whether damages are excessive, courts of appeals should employ the same test as for any factual sufficiency question." *Firestone Tire & Rubber Co. v. Battle*, 745 S.W.2d 909, 917 (Tex. App.—Houston [1st Dist.] 1988, writ denied).  In this case, the Plaintiff did not offer sufficient evidence of any element of damages.

### 1.   Compensatory Damages

#### a.   Past Pain and Suffering

The jury awarded Faulkenberry $275,000 in past pain and suffering damages. However, there was no evidence submitted at trial of past pain and suffering. Docket Entry No. 81, pg. 3. "[T]he injured party must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated." *Allen v. Whisenhunt*, 603 S.W.2d 242, 244 (Tex. Civ. App.—Houston [14th Dist.]

1980, writ dism'd). No exhibit was admitted that discussed or calculated this amount.  The only testimony that was offered about past pain and suffering was the Plaintiff's testimony. TT Vol.1, 79-93. Faulkenberry only stated that he was "in a lot of pain" after he was arrested. TT. Vol.2, 86:20. However, the record also reflects Faulkenberry's testimony that he never complained to EMS that his back hurt or that his wrists were cut and he never sought treatment for his wrists. TT Vol.2, 31:15-25. Faulkenberry also testified that he did not tell anyone at the Caldwell County Jail that he was injured or in pain. TT Vol.2, 29:12-22. Further, Derek Lappe, the paramedic for Lockhart EMS, testified that Faulkenberry was offered to be transported to the hospital and did not complain of an injury to his back. TT Vol.3, 133:18 – 134:5. Specifically, Faulkenberry refused transportation to the hospital. TT Vol.3, 136:3-5. Mr. Lappe stated that:

> [Faulkenberry] was very, very agitated. He was dismissive. He was yelling obscenities. When I walked up to him, I asked if he was okay, how he was doing, what was going on, he said that he was fine, he was not hurt. He didn't need medical attention. However, because he was in custody, I did have to evaluate him. I did notice he did have a laceration to the eye. We cleaned it up, we bandaged him. He denied any head, neck or back pain, no loss of consciousness, and just didn't want any medical treatment at all and just kept saying that he was okay.

TT Vol.3, 131:25 – 132:9.

The jury verdict of $275,000 for physical pain and/or mental anguish Faulkenberry allegedly sustained in the past is excessive and is not supported by the evidence in this case.

### b.  Past Medical Expenses

Faulkenberry was awarded $74,804.64 for past medical expenses. Docket Entry No. 81, page 3.  However, the evidence admitted at trial of past medical bills was in error and this evidence should have been excluded. The only evidence of medical bills was introduced through the testimony of Dr. Josey. TT Vol.2, 152-210. Dr. Josey did not produce an expert report (TT Vol.2, 164:12-165:16) and did not know the billing codes for any of the billing records. *Id*. at 205:20-208:25. Dr. Josey should not have been allowed to testify about another doctor's billing records

because he had no personal knowledge of their authenticity and he was not disclosed as an expert witness. *Id*. at 167:24-171:21. Dr. Josey's testimony about billing records was hearsay and lacked the proper foundation to be admitted into evidence.  Therefore, the Court should vacate the jury verdict as to any past medical billing records not personally authenticated by Dr. Josey.

### c.   Past Lost Wages

Faulkenberry was awarded $55,989 for past lost wages. Docket Entry No. 81, pg. 3. However, there was no evidence introduced regarding past lost wages. The only exhibits entered into evidence regarding income were Faulkenberry's tax returns for his business, Richardson Chop Shop (Plaintiff's Exhibit 19). Faulkenberry's counsel made an offer of proof outside of the presence of the jury regarding his personal lost income, but that information was not admitted into evidence. TT Vol.1, 159:9-164:14.  Therefore, there was no evidence presented that Faulkenberry lost any past wages as a result of his injury in this case.  The Court should vacate the jury verdict as to any past lost wages.

### d.   Future Physical Pain or Mental Anguish

Faulkenberry was awarded $250,000 for future pain and mental anguish. Docket Entry No. 81, pg. 3. However, there was no credible evidence admitted regarding future pain and mental anguish. Faulkenberry testified that he was currently in pain to "some degree." TT Vol.1, 90:11. However, he admitted on cross-examination that his pain was "much better" and "gone." *Id*. at 32:23-33:5.  For the jury to award such a large amount for future pain and mental anguish is outside of the evidence presented at trial and is clear error. "Neither expert witnesses nor the jurors may be turned loose in the domain of conjecture as to what may by possibility ensue from a given statement of facts [of evidence of future damages]. The witness must be confined to those which are reasonably probable, and the verdict must be based upon evidence that shows with reasonable probability that the injury will produce a given effect." *Fisher v. Coastal Transp. Co.*, 149 Tex.

224, 228 (1950).  Dr. Josey testified that Faulkenberry's current back pain was from an injury he sustained after the arrest. TT Vol.2, 195:10-19. There was no evidence that it was reasonably probable that Faulkenberry will incur future pain and mental anguish and no testimony was offered regarding future disability. Therefore, the Court should vacate the jury verdict as to future pain and mental anguish.

### e.  Future lost wages

The jury awarded Faulkenberry $250,000 for future lost wages. Docket Entry No. 81, pg. 3. However, there was no evidence presented of future lost wages.  The jury instruction clearly stated that any award for lost wages was to be discounted to present value. *Id.* Any testimony regarding such evidence was specifically excluded by the Court at trial. TT Vol. 1, 114:8-116:1. Furthermore, Faulkenberry's expert witness and accountant did not testify at trial and his report was never entered into evidence.  Therefore, there was no evidence for the jury to consider of future lost wages, let alone evidence that would have allowed the jury to discount future lost wages to present value.  The Court should vacate the jury verdict as to any award of future lost wages.

### 2.  Punitive Damages

### a.  Deputy Taylor

The jury erred in awarding punitive damages against Defendant Michael Taylor. In response to Jury Question 1(c), the jury answered "No" as to whether Deputy Taylor used excessive force against the Plaintiff.  Docket Entry No. 81, pg. 2. However, in response to Jury Question 4(a) the jury answered "Yes" as to Deputy Taylor's malice or reckless indifference regarding the use of force; and in response to Jury Question 4(b), the jury answered "$100,000" for punitive damages awarded against Deputy Taylor. *Id.* at 5. Because the jury did not find that Deputy Taylor used excessive force, the jury could not have found him liable for any injury to

Faulkenberry. *See generally Smith v. Wade*, 461 U.S. 30 (1983). Therefore, the jury could only have answered questions 4(a) and 4(b) "No" and "$0," respectively.

### b.  Sergeant Yost

The United States Supreme Court has held "that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "The award of punitive damages is a harsh remedy and normally is not favored by law." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir.1985)(*citing Lee v. Southern Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir.1970)). "It is for this reason that a defendant's conduct must have been in reckless disregard for the rights of others, and not just merely negligent, before exemplary damages will be assessed." *Id.* "While States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In *BMW v. Gore*, the United States Supreme Court laid out a three-part test to analyze whether punitive damages are excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).

While the jury found Sergeant Yost violated Faulkenberry's Fourth Amendment right to be free from excessive force, the award of punitive damages against Sergeant Yost was outside of the evidence presented at trial because there was no evidence that Sergeant Yost acted with malice or with reckless indifference. No expert testified about the malice or reckless indifference of any officer. The only testimony that could possibly have been construed as covering this subject was

Sergeant Yost himself. *See generally* TT Vol.2, 87:4-91:11; 118:3-20. However, as a matter of law Sergeant Yost did not use excessive force in taking the Plaintiff into custody. *See* Subsection C above.

Applying parts one and two of the *Gore* test, the degree of reprehensibility of Sergeant Yost's conduct is, at best, slight; the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award is great. Sergeant Yost chose to execute a failed leg sweep maneuver that has been held, as a matter of law, to not be excessive force. *Griggs*, 841 F.3d at 314. Yost then used an open hand strike to secure Faulkenberry's hands, which were under Faulkenberry's body where the officers believed a gun may be present.  This strike resulted in a 1 centimeter cut above one eye. Defendants' Trial Exhibit 11. An award of a $350,000 is grossly excessive for a 1 centimeter cut.

The jury's verdict also fails part three of the *Gore* test because in similar cases a plaintiff is not awarded over $1.3 million for a cut above one eye. It is clear in this case that the jury did not like the fact that Faulkenberry was arrested and spent time in jail. Otherwise, they would not have attempted to award punitive damages against Deputy Taylor (the only differentiating factor from Houseton was that Taylor filed the charges against Faulkenberry).  Both Deputies Taylor and Houseton participated in the arrest of Faulkenberry. The one fact that distinguishes the two officers is that Deputy Taylor filed the arrest affidavits and Deputy Houseton did not. It is clear that is the only reason why the jury awarded punitive damages against Deputy Taylor and not Deputy Houseton. Similarly, the jury only awarded punitive damages against Yost because the jury did not like the fact that Faulkenberry was arrested. However, false arrest and malicious prosecution were not an issue in this case because those claims were either dismissed by the Court or nonsuited before trial. Docket Entry No. 51 at 7-10 and 20-22 and Docket Entry No. 52. Therefore, no

evidence should have been allowed regarding the arrest. This error led to the award of punitive damages.

**E. In the alternative, motion for new trial.**

In the alternative, Sergeant Yost requests a new trial because of the jury's inconsistent verdict and the absence of evidence to support the jury's finding that Sergeant Yost used excessive force. FED. R. CIV. P. 59. Further, there is no evidence to dispute that under these facts a reasonable officer would perceive Sergeant Yost's actions as objectively unreasonable. The Court erred in allowing the testimony and evidence concerning criminal charges and the district attorney's prosecutorial discretion.

"To be entitled to a new trial based on erroneously admitted or excluded evidence, the party seeking a new trial must show the trial court both erred in its decision and that the error adversely influenced the jury's verdict. *Weathersby v. One Source Mfg. Technology*, L.L.C., 2009 WL 8747824 (W.D. Texas, April 2, 2009). Federal Rule of Evidence 401 states that "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

In the Court's Order on the summary judgment motion, the Court ruled that the Officer Defendants were entitled to qualified immunity on the claim of false arrest. Docket Entry No. 51, at 20-22. The Court states that "the fact that the County later declined to pursue any charges is irrelevant." *Id.* at 22. The inclusion of testimony and evidence at trial related to the criminal charges filed against Faulkenberry and the District Attorney's decision to decline to prosecute led to an inconsistent verdict – the jury awarded punitive damages against Deputy Taylor. Further, it is apparent based on this inconsistency that the jury examined this testimony and evidence in its verdict against Sergeant Yost. It is indisputable that such testimony and evidence was not relevant to any allegation of excessive use of force and was of no consequence in determining whether

Sergeant Yost used excessive force. All decisions related to the criminal charges filed against Faulkenberry and the District Attorney's decision concerning the prosecution of those charges were following the claims presented to the jury at trial, claims of excessive use of force and unreasonable search. Therefore, Sergeant Yost requests a new trial.

### III.    Conclusion

Because Lawrence Faulkenberry failed to provide sufficient evidence establishing that Sergeant Yost's actions were objectively unreasonable in the light of clearly established law and the damages in this case are not supported by the evidence, Sergeant Yost requests that his Renewed Motion for Judgment as a Matter of Law be granted and judgment entered in his favor. Further, Sergeant Yost requests that the filing of this motion does not prejudice him from filing another renewed motion for judgment as a matter of law after the judgment is entered. Finally, Sergeant Yost request that the Court grant any other relief it deems to be just and proper.

Respectfully submitted,

/s/ J. Eric Magee
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com

Philip B. Arnold
SBN: 24044710
p.arnold@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Trek Doyle
Doyle & Seelbach
7500 Rialto Blvd., Bldg. 1, Ste. 250
Austin, Texas 78735
trek@doyleseelbach.com

Malcolm S. Nettles
The Law Offices of Malcolm S. Nettles, P.C.
2909 Riviera Road
Austin, Texas 78733
malcolmnettles@gmail.com

*Attorneys for Plaintiff*

/s/ J. Eric Magee
J. Eric Magee